Bruce DOREMUS, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Dr. C. H. FARRELL et al., Defendants.

Stanley ROSENFIELD, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Virgil E. NORTHWALL et al., Defendants.

Lucille PATTERSON, Individually and on behalf of all other persons similarly situated, Plaintiffs,

and

Beth Deavers, Intervening Plaintiff,

v.

Robert R. CAMP et al., Defendants.

Civ. Nos. 75–0–168, 75–0–189, 75–L–80.

United States District Court,
D. Nebraska.

Dec. 23, 1975.

Terrence J. Ferguson, Legal Aid Society of Omaha-Council Bluffs; Ronald J. Palagi, Omaha, Neb.; David L. Piester and William H. Nollkamper, III, Legal Aid Society of Lincoln, Inc., Lincoln, Neb., for plaintiffs.

Henry L. Wendt, Deputy County Atty., Douglas County, Neb., Robert G. Gibson, Deputy County Atty., Lancaster County, Neb., for defendants.

Before LAY, Circuit Judge, and SCHATZ and DENNEY, District Judges.

DENNEY, District Judge.

This matter comes before the Court upon the motion of plaintiffs in these consolidated cases for summary judgment, declaring unconstitutional and enjoining the enforcement of Neb.Rev.Stat. §§ 83–320, 83–322, 83–322.01, 83–325, 83–325.02–325.04, 83–326, 83–328 and 83–328.03 (1971) and 83–323, 328.02 and 337 (Supp.1974), which establish procedures for the adjudication and involuntary civil commitment of persons alleged to be mentally ill.[1] The cases were brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1343(3) and (4) and the power to grant declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

Plaintiffs, Stanley Rosenfield and Bruce Doremus, brought this action on their own behalf and as representatives of a class composed of persons who are now and will be detained by the Douglas County Board of Mental Health for examination or committed by the Douglas County Board of Mental Health to the Douglas County Hospital or the Nebraska State Mental Hospital, either temporarily or indefinitely, as a result of an information filed with the Douglas County Board of Mental Health by an interested third person or a finding of mental illness by the Douglas County Board of Mental Health. Plaintiff, Lucille Patterson, brought this action also as a class action on her own behalf and as representative of a class composed of persons who are now and will be detained by the Lancaster County Board of Mental Health for examination or committed by the Lancaster County Board of Mental Health to the Lincoln Regional Center, either temporarily or indefinitely as a result of an information filed with the Lancaster County Board of Mental Health by an interested third person or a finding of mental illness by the Lancaster County Board of Mental Health. The Court, in an unreported opinion, certified the consolidated cases as class actions pursuant to Rule 23(a) and (b)(2), F.R.Civ.P.

The defendants are members of the Douglas County Board of Mental Health, the Hospital Administrator and Medical Director of Douglas County Hospital, members of the Lancaster County Board of Mental Health, the chief executive officer of the Lincoln Regional Center and the Sheriff of Lancaster County.

Plaintiffs contend that the Nebraska civil commitment scheme is unconstitutional on its face and as applied, in violation of the due process clause of the fourteenth amendment. Because an injunction is sought against the state statutes, the three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.[2]

While the facts of each plaintiff's detention or commitment is not at issue here[3], a brief recitation of the relevant history of one of the plaintiffs will facili-

---

1. The relevant Nebraska statutes are reproduced in an Appendix to the filed opinion; the Appendix is not published.

2. The attorney general and the governor of Nebraska are not charged with the enforcement of the challenged state statutes and hence are not necessary parties. *See Todd v. Oklahoma State Democratic Central Committee*, 361 F.Supp. 491 (W.D.Okl.1973) and cases cited therein at pp. 498–499. However, pursuant to 28 U.S.C. § 2284(2), which requires notice of the hearing by the clerk of the court to the governor and attorney general of the state at least five days prior to the hearing, the governor and attorney general have entered notices of appearance in the case.

3. Some of the plaintiffs also seek damages for tortious conduct or deprivations occurring during the commitment process. The damage claims shall be tried by the district judge before whom the cases arose, unless the judge should determine not to exercise pendent jurisdiction over the tort claim. This three-judge court was convened only for the purpose of determining the constitutionality of the Nebraska statutes. This aspect of the case is submitted upon the pleadings, briefs and stipulations of the parties.

tate an understanding of the Nebraska civil commitment procedures. On May 5, 1975, plaintiff, Stanley Rosenfield, was taken to the Douglas County Hospital by officers of the Omaha Police Division and admitted to the hospital without his consent. Two doctors attended Rosenfield at the hospital and certified him as mentally ill. On the same day, a nurse requested involuntary hospitalization of Rosenfield upon the certification of the two licensed physicians that he was mentally ill, pursuant to Section 83–322.01. The basis for the certification was inappropriate behavior, i. e., waltzing about the motel in a bathing suit, calling the guests various names. The doctors diagnosed Rosenfield as a paranoid schizophreniac. We note also that Rosenfield had been previously committed twice by his wife.

Rosenfield was held involuntarily at the Douglas County Hospital on the basis of the doctors' certificate from May 5, 1975, until May 7, 1975. On May 7, an information was filed by a deputy county attorney stating his belief that Rosenfield was mentally ill and a fit subject for custody and treatment in a state hospital within Douglas County. On the same day, an order was entered by the Douglas County Board of Mental Health, finding that Rosenfield should have care and treatment in the Douglas County Hospital, and ordering that he be admitted for observation, care and treatment pending further order of the Board. The evidence upon which the Board based its order of May 7, 1975, was that contained in the information only.

Between May 7 and May 15, 1975, Rosenfield was kept in a locked room with leather restraints and given various drugs. On May 15, he was examined by a doctor on the Board who concluded that plaintiff was mentally ill. On the same day, the Board held a hearing at which they found Rosenfield to be mentally ill and ordered him committed for treatment and care for a period not to exceed sixty days. Rosenfield had been given no notice of this hearing, was not present nor represented by counsel, and no testimony was adduced by the Board. The Board based its decision upon the report of the examining doctor, who is a member of the Board, and upon the information filed by the deputy county attorney.

## THE CIVIL COMMITMENT PROCESS

The Nebraska civil commitment scheme provides for three stages of involuntary commitment. The first stage may be termed emergency detention. Section 83–325 authorizes the Board to order a person against whom an information has been filed detained for examination and investigation before commencement of formal commitment proceedings. The Board members are the clerk of the district court, a practicing attorney and a licensed psychiatrist.

The second stage of detention may be termed temporary commitment and begins with the filing of the certificate of the examining physician pursuant to Section 83–326 that the person in question is mentally ill. The physician may or may not be a Board member, but, as a matter of practice, the physician on the Board conducts the examination. In accordance with Section 83–328, as soon as practicable after the certificate of the examining physician has been filed, the Board must conclude whether the person alleged to be mentally ill is mentally ill. In accordance with Section 83–325, the Board may hear testimony at a preliminary inquiry and determine in their discretion whether the presence of the proposed patient is necessary. After the Board enters its findings in accordance with Section 83–328, if the person is found to be mentally ill and should be admitted to a hospital, they order the superintendent of the state hospital to receive and keep the person as a patient for a period of observation not to exceed sixty days, at which time the hospital superintendent shall certify that the patient is or is not mentally ill.

The hospital superintendent's certification of the patient as mentally ill begins the third stage of commitment which may be termed indefinite commitment.

Sections 83–328.02 and 328.03 provide for appeal from the findings of the Board to the district court by the person alleged to be mentally ill, any relative or immediate friend on his behalf, or the county attorney. Section 83–340 mandates the release of patients cured and Section 83–343 guarantees that the writ of habeas corpus will be available to any person confined in a state hospital for the mentally ill. Plaintiffs challenge the procedural facets of the first two stages of commitment, as well as the standard of commitment for mental illness which is the same for all three stages.

▇ Defendants have extensively briefed and argued before the Court the appropriateness of abstention in this case. Although defendants are correct in their argument that a federal court should decline to pass on the constitutionality of a state statute where state court interpretation of the statute could eliminate the federal constitutional claims presented, the argument is inapposite to this case. Although the standards for commitment could possibly be construed so as to avoid doubt as to its constitutionality, the statute's procedural defects cannot be cured by interpretation. *See Anderson v. Solomon*, 315 F.Supp. 1192, 1195 (D.Md.1970). Defendants' reliance on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny is likewise misplaced, because plaintiffs do not seek to enjoin a state judicial proceeding. To retain jurisdiction in this case and require the plaintiffs first to seek redress in the courts of the state would be a usurpation of this Court's constitutional duty to protect federal rights.

▇ The parties are in agreement that the due process clause of the fourteenth amendment applies to involuntary commitment proceedings. *See Specht v. Patterson*, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The controversy centers around the minimal constitutional standards required and the proper standard for commitment. De-

fendants vigorously assert that the Nebraska procedure is constitutional both on its face and as applied. They attempt to justify the relaxed due process standards on the basis that (1) the state, as *parens patriae*, is treating the individual, not punishing him for his behavior, and (2) civil commitment proceedings are "civil", not "criminal." In the discussion that follows, we have refrained from discussing the history of mental health laws and civil commitments. A sufficient analysis may be found in *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis. 1974), *vacated and remanded on other grounds*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). *See also* Note, *Developments—Civil Commitment of the Mentally Ill*, 87 Harv.L.Rev. 1190 (1974).

## STANDARDS FOR COMMITMENT

Plaintiffs' first challenge is that the definition of those subject to involuntary commitment is both vague and overbroad. Section 83–328 provides that the county boards who control commitment are to decide whether a person is "mentally ill" and, if so, whether full time hospitalization is required.

Pursuant to Section 83–320, the Board has the power to hold persons for safekeeping whom they perceive to be mentally ill. Section 83–322 provides that the information upon which the Board obtains jurisdiction over a person must allege that the person is mentally ill and a fit subject for custody and treatment in a hospital. The concept of "mental illness," however, is never defined and the determination of whether a person is mentally ill is left wholly within the discretion of the Board. The only statutory guideline is found in Section 83–306(4) which states that mental illness includes any type of mental illness from whatever source, be it disease, narcotics, alcohol, an accident, or any other conditions or happening.

In *Jackson v. Indiana*, 406 U.S. 715, 728, 92 S.Ct. 1845, 1853, 32 L.Ed.2d 435 (1972), the Supreme Court construed a statute authorizing detention "in the interest of the welfare of such person or

. . . others . . . . " to require an independent showing of dangerousness. In *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1971), the Court was presented with a challenge to the Wisconsin Sex Crimes Act which provided for commission of a person convicted of a crime "probably directly motivated by a desire for sexual excitement" to the Department of Health and Social Services. Petitioner sought federal habeas corpus relief, contending that the Mental Health Act provides for procedural safeguards not found in the Sex Crimes Act and, hence, the Sex Crimes Act is violative of equal protection.

The Wisconsin Mental Health Act authorizes commitment of a person for compulsory treatment if the court or jury finds that he is (1) mentally ill and (2) a "proper subject for custody and treatment." Wisc.Stat.Ann. §§ 51.02(5), 51.03 (1957). " 'Mental illness' means mental disease to such extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." Wisc. Stat.Ann. § 51.75, Art. II(f) (Supp.1971). The Supreme Court held that implicit in the Wisconsin statutes' definition is the requirement that a person's "potential for doing harm, to himself or to others, is great enough to justify such a massive curtailment of liberty." 405 U.S. at 509, 92 S.Ct. at 1052. Hence, in *Lessard v. Schmidt, supra*, the court, in construing the same Wisconsin statutes, adopted the Supreme Court's standard and held that "the statute itself requires a finding of 'dangerousness' to self or others in order to deprive an individual of his or her freedom." 349 F.Supp. at 1093.

Subsequently, courts which have considered this substantive due process challenge to civil commitment statutes have generally held that the state may legitimately control those mentally ill persons who are dangerous to themselves or others. *Kendall v. True*, 391 F.Supp. 413, 417 (W.D.Ky.1975); *Lynch v. Baxley*, 386 F.Supp. 378, 390 (M.D.Ala.1974); *Bell v. Wayne County General Hospital at Eloise*, 384 F.Supp. 1085 (E.D.Mich.1974).

The "State may [not] lawfully confine an individual thought to need treatment and justify that deprivation of liberty solely by providing treatment. Our concepts of due process would not tolerate such a 'trade-off.' " *O'Connor v. Donaldson*, 422 U.S. at 589, 95 S.Ct. at 2500, Chief Justice Burger concurring. Considering the fundamental rights involved in civil commitment, the *parens patriae* power must require a compelling interest of the state to justify the deprivation of liberty. In the mental health field, where diagnosis and treatment are uncertain, the need for treatment without some degree of imminent harm to the person or dangerousness to society is not a compelling justification. As Mr. Chief Justice Burger stated in *O'Connor v. Donaldson, supra*:

Despite many recent advances in medical knowledge, it remains a stubborn fact that there are many forms of mental illness which are not understood, some which are untreatable in the sense that no effective therapy has yet been discovered for them, and that rates of 'cure' are generally low. See Schwitzgebel, The Right to Effective Mental Treatment, 62 Calif.L.Rev. 936, 941–948 (1974). . . . Similarly, . . . , it is universally recognized as fundamental to effective therapy that the patient acknowledge his illness and cooperate with those attempting to give treatment; yet the failure of a large proportion of mentally ill persons to do so is a common phenomenon. See Katz [The Right to Treatment—An Enchanting Legal Fiction?, 36 U.Chi.L.Rev. 755 at 768–769 (1969)]. 422 U.S. at 584, 95 S.Ct. at 2498.

To permit involuntary commitment upon a finding of "mental illness" and the need for treatment alone would be tantamount to condoning the State's commitment of persons deemed socially undesirable for the purpose of indoctrination or conforming the individual's beliefs to the beliefs of the State. Due process and equal protection require that the standards for commitment must be

(a) that the person is mentally ill and poses a serious threat of substantial harm to himself or to others; and (b) that this threat of harm has been evidenced by a recent overt act or threat. The threat of harm to oneself may be through neglect or inability to care for oneself.

We are unable to imply these standards in the Nebraska statutes as did the Supreme Court in the Wisconsin statutes construed in *Humphrey v. Cady, supra,* given its references in Section 83–306(4) to the mentally ill as "persons suffering from any type of mental illness whatsoever."

## PROCEDURAL DUE PROCESS

### A. NOTICE

■ Under Nebraska's commitment law, there is no requirement that the person to be committed be given notice that an application of commitment has been filed and that the County Board of Mental Health is considering commitment. Since effective notice is a prerequisite to the exercise of an individual's other due process rights, mandatory notice must itself be a requirement of due process. To comply with due process requirements, the Supreme Court has held that notice of any scheduled hearing must be given sufficiently in advance of the proceeding to afford one a reasonable opportunity to prepare. *In Re Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The notice prior to the preliminary inquiry for the emergency detention must inform the person of the nature of grounds, reasons and necessity for the emergency detention, in addition to notice of the time and location of the hearing. The notice should also inform the subject of his right to counsel. The notice prior to the formal hearing must include, in addition to notice of the time and location of the hearing, notice to the individual of the reasons for his detention, the standards for commitment, and the petition itself to be served sufficiently in advance of the hearing to permit preparation.

### B. PRELIMINARY INQUIRY AND FINAL HEARING

■ Section 83–325 authorizes the Board to order a person against whom an information has been filed detained for examination and investigation. The determination to confine the person may be done with or without a hearing. Section 83–328 requires the Board to conclude its investigation as soon as practicable after the filing of the certificate by the examining physician, allowing persons to be held up to 60 days for observation. The statutes are deficient in failing to require that a preliminary inquiry to establish probable cause be held promptly after the emergency detention and in failing to require a full and formal hearing on the necessity for commitment to be held within a reasonable time after preliminary inquiry. The initial hearing should take place within five days of confinement and the formal hearing should take place no later than fourteen days after the preliminary hearing, unless good cause is shown for an extension.

■ Section 83–325 states in part that if the Board "decide[s] that the presence of the proposed patient is unnecessary or would probably be injurious to him, the board members shall not require the proposed patient to be present at the hearing on the application." The subject has a constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion. *Kendall v. True,* 391 F.Supp. at 419; *Bell v. Wayne County Hospital,* 384 F.Supp. at 1094. Furthermore, the statutes fail to ensure the subject the right to be free from the involuntary drugs or other treatment which might dilute or destroy his ability to assist in the presentation of his defense.

■ The right to be present at the hearing necessarily includes the constitutional right of confrontation and cross-examination. The subject must also be

given the opportunity to present evidence in his own behalf and compel the attendance of witnesses during the final hearing.

## C. RIGHT TO COUNSEL

■ Nebraska Statutes currently provide that the subject may be afforded the assistance of counsel, including appointed counsel for the indigent. Sections 83–325.01–04. Clearly, this is a fundamental requirement at both hearings. However, under the Nebraska procedural scheme, the right is illusory because there is no provision that the subject be timely notified of this right.

■ The right to counsel may only be waived by an intelligent, knowing and voluntary waiver. This would require an initial inquiry to determine the competency of the subject. The waiver of rights by the subject must be scrutinized carefully.

## D. TRIAL BY JURY

■ In *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the Court held that the right to jury trial is not constitutionally required as an element of due process in juvenile proceedings. Justice Blackmun, writing for the Court, adopted a balancing analysis, weighing the advantages to the individual against the costs to the state. We believe that the additional procedural fairness and community involvement ensured by a jury trial is outweighed by the possible substantial sacrifice of the state's interests in economy and informality and the subject's right to privacy. The decision to make this a statutory right lies with the legislature.

## E. ADMINISTRATIVE DETERMINATION

■ Plaintiffs contend that due process requires the final commitment hearing to be a judicial determination, rather than an administrative one. Although a judicial determination would be desirable, since courts can more effectively preserve procedural due process and constitutional rights, as well as rule more

proficiently on evidentiary questions, we do not believe that due process or equal protection mandates a judicial hearing. The Supreme Court has recognized the power of administrative boards to revoke parole and probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 636 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The deportation of aliens has long been considered a proper function for executive commissions. *See, e. g., Chew v. Colding*, 344 U.S. 590, 597, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The procedural safeguards guaranteed by due process, the standards for commitment and the availability of prompt de novo review by the district court pursuant to Section 83–328.02 after the finding of mental illness by the county board, convinces the Court that an administrative determination is not constitutionally objectionable.

## F. IMPARTIAL TRIBUNAL

■ Section 83–326 authorizes the physician on the Board to perform the examination of the subject. This procedure combines the investigative, prosecutorial and adjudicative functions in one authority and denies the subject due process of law. *See, e. g., Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1965).

## G. ADDITIONAL CONTENTIONS

■ In addition to the aforementioned deficiencies, plaintiffs argue that the Nebraska statutes are deficient in their failure to provide for the standard of proof beyond a reasonable doubt and the exclusion of hearsay. Traditionally, these are matters left for judicial resolution.

The Court is concerned that the imposition of the standard of proof beyond a reasonable doubt may not be feasible in the concept of mental illness. Given the

relatively undeveloped state of psychiatry, proof beyond a reasonable doubt is too stringent a standard. The "clear and convincing" evidence standard would not be impracticable and is required because of the loss of liberty and the attendant stigmatization of the forced confinement and finding of mental illness. *Lynch v. Baxley*, 386 F.Supp. at 392–4; *Dixon v. Attorney General of Pennsylvania*, 325 F.Supp. 966, 974 (M.D.Pa.1971).

The Court cannot discern a rational basis for admitting evidence in a final civil commitment hearing which would be inadmissible in criminal trials. Equal protection requires that "[w]here standard exclusionary rules forbid the admission of evidence, no sound policy reasons exist for admitting such evidence in an involuntary mental commitment hearing." *Lessard v. Schmidt*, 349 F.Supp. at 1103.

We conclude that the Nebraska civil commitment statutes are unconstitutional insofar as they:

1. Fail to require that the subject be dangerous to others or to himself, as evidenced by a recent overt act or threat.

2. Fail to require effective and timely notice of the "charges" under which a person is alleged to be a proper subject for involuntary commitment.

3. Fail to require adequate notice of all rights.

4. Fail to require that a preliminary inquiry on probable cause be held within 5 days after arrest if the proposed patient is detained pending final commitment.

5. Fail to require a full and formal hearing on the necessity for commitment to be held within 14 days after the preliminary inquiry.

6. Fail to insure the proposed patient the right to be present at the hearing and to be free from involuntary drugs or other treatment, and to have the assistance of counsel at all hearings on his commitment.

7. Fail to insure the proposed patient in the commitment hearing the right to confront and cross-examine witnesses against him, and to present witnesses on his own behalf at the final hearing.

8. Fail to require separation of functions so as to guarantee an impartial tribunal, that is, the examining physician should not be permitted to vote in the commitment decision.

The Court, therefore, declares unconstitutional Neb.Rev.Stat. §§ 83–325, 83–328 (1971) and § 83–306(4) (Supp.1974). We emphasize that this opinion does not attempt to establish a full panoply of statutory rights and procedures. Although plaintiffs have urged the Court to specify precise statutory requirements, we have refrained from so doing in deference to the legislature. We also have not considered every contention raised in the complaints, because we are of the opinion that certain issues are not proper for consideration in the context of this case.

The plaintiff and the members of the class are entitled to declaratory relief and to injunctive relief against future commitments under the statutes which do not comply with due process. We require that all future involuntary commitments by the named defendants comport fully with the minimum requirements of substantive and procedural due process as established by the Court. For the reason that the physician on the Board may not present evidence nor conduct the investigation, the county attorney may prosecute civil commitments pursuant to Neb.Rev.Stat. § 23–1201 (1974) which provides in part that "[i]t shall be the duty of the county attorney to prosecute or defend, on behalf of the state and county, all suits, applications, or motions, civil or criminal, arising under the laws of the state in which the state or the county is a party or interested."

The Court must fashion proper equitable relief for the class. It is our opinion that the defendants should be ordered to

conduct new hearings for those members of the class presently committed. However, in order to establish the proper procedure and time limits, the Court must be informed of various pragmatic factors. In this regard, we shall require counsel to submit proposals to the Court.

An Order is filed contemporaneously herewith in accordance with the findings delineated herein. The above findings shall consist of findings of fact and conclusions of law in accordance with Rule 52, F.R.Civ.P.