(593 P 2d 423)

No. 49,781

In the Matter of the Treatment of MARILYN GATSON, Proposed Patient.

Opinion filed April 20, 1979.

*Barry Albin,* of Kansas City, for the appellant.

*Michael Grosko,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Nick Tomasic,* district attorney, for the appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

SWINEHART, J.: This is an appeal from an involuntary commitment proceeding wherein the appellant was adjudicated a "mentally ill person" within the meaning of K.S.A. 1977 Supp. 59-2902(1) and ordered to Osawatomie State Hospital for treatment.

On December 1, 1977, the brother of the appellant filed a petition alleging the appellant to be a mentally ill person and requesting such an adjudication and commitment for treatment. Counsel was appointed to represent the appellant and a hearing was held on December 21, 1977. The evidence demonstrated that the appellant, a 23 year old female, had been headed toward a successful future earlier in life. However, sometime in 1974 the appellant's behavior began to deteriorate following an unfavorable relationship with a college basketball player.

On November 29, 1977, she was picked up by police officers who reported she was walking down the street nude and that she may have been raped. This incident evidently prompted the filing of the petition by the appellant's brother. Further facts will be discussed below.

At the conclusion of the hearing, the jury found the appellant to

be a mentally ill person and the court ordered her to Osawatomie State Hospital for treatment. This appeal followed.

Appellant argues that K.S.A. 1977 Supp. 59-2902(1) requires a finding that the proposed patient is presently dangerous to herself or to others, and contends that there was inadequate evidence supporting such a finding.

K.S.A. 1977 Supp. 59-2902 provides:

"(1) The term 'mentally ill person' shall mean any person who is mentally impaired to the extent that such person .is in need of treatment and who is dangerous to himself or herself or others and

(a) who lacks sufficient understanding or capacity to make responsible decisions with respect to his or her need for treatment, or

(b) who refuses to seek treatment . . . . Proof of a person's failure to meet his or her basic physical needs, to the extent that such failure threatens such person's life, shall be deemed as proof that such person is dangerous to himself or herself."

The present statute contains significant changes which were made by amendment in 1976.

"(1) A person who is merely dangerous to property is no longer considered a 'mentally ill person'; (2) the old definition of 'mentally ill person' included a person 'who . . . probably will become dangerous. . .', the new definition deletes the term 'probably will become' and requires a finding that the person is presently dangerous; (3) the word 'care' has been deleted." Note, *Senate Bill 26—Mental Patients' Bill of Rights,* 16 Washburn L.J. 149, 150 (1976).

The Special Committee on Health which proposed many of the changes. noted that "recent federal court decisions and an increasing concern for the protection of the rights of the mentally ill indicate additional standards and procedural requirements which should be added to the existing Kansas law, particularly to those statutes which are concerned with involuntary treatment." Senate Journal, p. 135 (1974). We find no Kansas cases dealing with K.S.A. 59-2902 but recognize a line of federal cases which have considered the degree of dangerousness requisite to a finding of mental illness. In *Lessard v. Schmidt,* 349 F. Supp. 1078 (E.D. Wis. 1972), vacated and remanded on other grounds, 414 U.S. 473, 38 L.Ed.2d 661, 94 S.Ct. 713 (1974), reinstated and enforced, 379 F. Supp. 1376 (E.D. Wis. 1974), vacated and remanded on other grounds, 421 U.S. 957, 44 L.Ed.2d 445, 95 S.Ct. 1943 (1975), reinstated, 413 F. Supp. 1318 (E.D. Wis. 1976), the Wisconsin civil commitment statutes were struck down on various grounds by a federal district court. The *Lessard* court relied on

dicta in *Humphrey v. Cady,* 405 U.S. 504, 509, 31 L.Ed.2d 394, 92 S.Ct. 1048 (1972), to justify its holding that involuntary commitment may only be based on a finding of mental impairment and dangerousness beyond a reasonable doubt:

"The [Supreme] Court did not directly address itself to the degree of dangerousness that is constitutionally required before a person may be involuntarily deprived of liberty. However, its approval of a requirement that the potential for doing harm be '*great enough* to justify such a *massive curtailment* of liberty' implies a balancing test in which the state must bear the burden of proving that there is an extreme likelihood that if the person is not confined he will do immediate harm to himself or others. Although attempts to predict future conduct are always difficult, and confinement based upon such a prediction must always be viewed with suspicion, we believe civil confinement can be justified in some cases if the proper burden of proof is satisfied and dangerousness is based upon a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another." 349 F. Supp. at 1093.

Following *Lessard,* Nebraska, Iowa and Hawaii involuntary commitment procedures were ruled unconstitutional for failure to require a finding that the proposed patients were mentally impaired and dangerous to themselves or others as evidenced by a recent overt act, attempt or threat. See *Suzuki v. Alba,* 438 F. Supp. 1106, Syl. ¶ 5, (D. Hawaii 1977); *Stamus v. Leonhardt,* 414 F. Supp. 439, Syl. ¶ 8 (S.D. Iowa 1976); *Doremus v. Farrell,* 407 F. Supp. 509, Syl. ¶ 4 (D. Neb. 1975). While we do not expressly adopt the above holdings and although technical distinctions may be drawn between types of confinement described as custodial, remedial, interim detention, etc., we are satisfied the above cases are representative of the general concern felt by the legislature when it enacted the amendments to the present statutes dealing with involuntary commitment, and we agree with appellant that a finding of present dangerousness to self or others, coupled with a finding of mental impairment, is required before treatment may be ordered. Although the determination will of necessity be on a case-by-case method, we believe a showing of *present* dangerousness will normally require evidence of a recent act, attempt, threat or omission of a serious nature.

In her brief the appellant states:

"We concede that [appellant] is mentally impaired and in need of treatment. . . . But we deny that she is dangerous to herself or anyone else. . . . She clearly is among those that the new definition sought to exempt."

Before addressing appellant's argument, we feel .it necessary to enunciate the applicable scope of review governing a challenge of insufficient evidence supporting a finding of dangerousness.

The legislature has seen fit to impose a stringent burden of proof upon the petitioner in involuntary commitment proceedings. K.S.A. 59-2917 provides in part:

"Upon the completion of the hearing, if the court or jury finds that the proposed patient is *beyond a reasonable doubt* a mentally ill person, and after a careful consideration of reasonable alternatives to inpatient treatment the court shall order treatment for such person at any treatment facility." (Emphasis supplied.)

In challenging the sufficiency of evidence in criminal actions, where the burden of proof is also "beyond a reasonable doubt," we have often stated the appropriate scope of review:

"On appellate review, the question is not whether the evidence established guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt. In making this determination, the evidence is viewed in the light most favorable to the state." *State v. Ames*, 222 Kan. 88, Syl. ¶ 5, 563 P.2d 1034 (1977); *State v. Hall*, 1 Kan. App. 2d 730, 731, 573 P.2d 635 (1977).

We conclude a similar rule inheres herein, and we hold that in testing the sufficiency of evidence supporting findings of mental impairment and dangerousness·in involuntary commitment procedures, our inquiry is limited to whether the evidence, when viewed in the light most favorable to the petitioner, is sufficient to form the basis for a reasonable inference that the proposed patient is a mentally ill person as defined in K.S.A. 1977 Supp. 59-2902(1).

When applying the above standard to the present case, we find that there is ample evidence supporting the finding that the appellant is dangerous to herself or others. Her brother testified that the appellant threatened their mother with physical harm and stated that the appellant would eventually harm herself. Appellant's mother testified that appellant was dangerous to herself and recited instances when she had gone out in the cold weather without clothes or shoes. The mother additionally testified that her daughter had threatened her and had also hit her younger brothers. Appellant's sister testified that appellant was dangerous to herself and noted that the appellant did not eat properly. Both medical witnesses testified that the appellant was dangerous to herself and Dr. Santos stated that her inability to recognize her

need for treatment was dangerous to her. The evidence was unequivocal that shortly before the petition was filed, appellant was picked up by police officers who reported that she was walking down the street nude and that she was a possible rape victim, although she refused any treatment afterward. Additionally, Dr. Santos' report of mental evaluation, prepared shortly after the petition was filed and admitted into evidence, states that appellant exhibited "bizarre behavior" and exposed herself nude on the ward.

Appellant emphasizes there is no evidence that she physically hurt herself or others and, therefore, that her behavior cannot be characterized as dangerous. We do not believe the legislature envisioned that a person could be found mentally ill and subject to involuntary commitment only where there is evidence of actual violence to persons or physical harm. To construe the statute in such a manner would frustrate the obvious intention of providing treatment for certain mentally ill persons before physical harm results and would extend the personal safeguards of the statutory scheme to an illogical degree. The legislation contains no requirement of physical harm and we can certainly foresee a situation, such as that presented herein, where arguably passive behavior gives rise to an imminently dangerous condition. While each case must be decided on its facts, we conclude the evidence, when viewed in the light most favorable to petitioner, was sufficient to form the basis for a reasonable inference of dangerousness within the meaning of K.S.A. 1977 Supp. 59-2902(1).

Finally, the appellant argues the court erred in allowing Dr. Santos to testify that she was "mentally ill" rather than "mentally impaired," thereby prejudicing the appellant by usurping the jury's function and shifting the burden of proof to appellant to show nonmental illness.

We note defense counsel stipulated as to Dr. Santos' expertness during his testimony. Expert testimony in the form of opinions otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact. *Massoni v. State Highway Commission,* 214 Kan. 844, Syl. ¶ 1, 522 P.2d 973 (1974). Although there are dangers inherent in the use of such flexible terms as "mentally impaired" and "mentally ill" we do not believe Dr. Santos' testimony prejudiced appellant's right to a fair hearing. At any rate, the potential misuse of clinical evidence

and opinion testimony is minimized by the more stringent burden of proof and other procedural safeguards adopted in the statutory scheme relating to involuntary commitment and we cannot say it was error to allow Dr. Santos to *testify* as to his opinion, based on his observations and examination of appellant, that she was a mentally ill person.

Judgment is affirmed.