(836 P.2d 1)

No. 67,142

In the Matter of the Treatment of JAMES K. ALBRIGHT.

Opinion filed June 12, 1992.

*Stephens A. Smiley,* of Olathe, for appellant.

*Darrell L. Smith,* assistant district attorney, for appellee.

Before ELLIOTT, P.J., PIERRON, J., and THEODORE B. ICE, District Judge, assigned.

PIERRON, J.: This is the proposed patient's appeal from an order of the district court ordering him into treatment at Osawatomie State Hospital pursuant to K.S.A. 59-2901 *et seq.,* "The Treatment Act For Mentally Ill Persons."

The proposed patient, James K. Albright, was ordered into treatment at Osawatomie State Hospital after a jury found he was a mentally ill person and likely to cause harm to himself or others.

Albright, a 33-year-old male, has suffered from schizophrenia since 1985. He has been treated for the condition a number of times. In May 1991, he was released from C.P.C. College Meadows, a psychiatric hospital in Lenexa, Kansas, where he was being treated. Within three days of his release, Albright stopped taking his prescribed medication and refused to continue any medical treatment.

Albright smashed his stereo with a sledgehammer to prevent rock-n-roll music from being played on it, believing that such music was demonically inspired. He spent much time reading the Bible and other religious writings and listening to religious tapes. On August 18, 1991, his mother, Ivoree Albright, tried to

coax Albright to come back to her home, where he resided, after finding him walking in the street in his stocking feet. On this occasion, Albright slapped his mother.

Two days later, on August 20, 1991, Ivoree Albright filed a petition alleging James Albright to be a mentally ill person. On September 9, 1991, a hearing was conducted. Evidence of the incident in the street on August 18 was admitted, as was testimony that Albright hears voices that he claims to be those of the Holy Spirit.

The jury also heard evidence that on May 4, 1991, Albright slapped his aunt as she attempted to persuade him to eat his food rather than read his Bible. Neither Albright's mother nor his aunt claim serious injury, and no other evidence of violent behavior or threats of violent behavior was presented.

A staff psychiatrist from Osawatomie State Hospital testified at trial that Albright suffered from paranoid schizophrenia; that Albright was unable to engage in a rational decision-making process regarding treatment by reason of his severe mental disorder; and that he was likely to cause harm to himself or others because, without medication, his condition would deteriorate and he could do harm given his past "assaultive behavior." The doctor additionally testified that without treatment, Albright's condition would deteriorate and he would reach the point where he would be unable to care for himself. He concluded that Albright was in need of treatment and that the only appropriate treatment was in the restrictive inpatient environment of a psychiatric hospital.

At the conclusion of the trial, the jury found Albright to be a mentally ill person pursuant to K.S.A. 59-2901 *et seq.,* and the court ordered him into treatment. Albright appeals from that finding.

The two issues on appeal are (1) whether the definition of "mentally ill person" contained in K.S.A. 1991 Supp. 59-2902(h), and the subsidiary definitions of terms contained therein, are overbroad and violative of the Fourth and Fourteenth Amendments to the Constitution of the United States and (2) whether the district court erred in refusing Albright's requested instructions which, he alleges, would have effectively removed the allegedly unconstitutional nature of the instructions.

At the outset, we note Albright does not raise on appeal the sufficiency of evidence at trial. This appeal is based solely on the constitutionality of the statute on its face and as it was applied to him.

In *City of Baxter Springs v. Bryant,* 226 Kan. 383, 598 P.2d 1051 (1979), the standard of review in cases concerning the constitutionality of a statute is set forth as follows:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution." Syl. ¶ 1.

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done." Syl. ¶ 2.

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt." Syl. ¶ 3.

"The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the courts do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of the courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which the courts cannot interfere." Syl. ¶ 4.

See also *In re Jones,* 228 Kan. 90, 95, 612 P.2d 1211 (1980) (statute providing for mandatory commitment of insanity acquitees not violative of due process just because it failed to provide for a separate hearing to determine present mental condition).

In addition, the Kansas Supreme Court has noted that it is its duty to "construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute. To accomplish this purpose the court may read the necessary judicial requirements into the statute." *State v. Durrant,* 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989). See *State v. Eaton,* 244 Kan. 370, 378-79, 769 P.2d 1157 (1989).

Albright claims that certain definitions in the Act at issue here are unconstitutional. K.S.A. 1991 Supp. 59-2902(h) defines a "mentally ill person" as any person who:

"(1) Is suffering from a severe mental disorder to the extent that such person is in need of treatment;

"(2) lacks capacity to make an informed decision concerning treatment; and

"(3) is likely to cause harm to self or others."

Abright basically challenges the constitutionality of the definition of subsection (3) above. Section (g) states that "[l]ikely to cause harm to self or others" means the person:

"(1) Is likely, in the reasonably foreseeable future, to cause substantial physical injury or physical abuse to self or others or substantial damage to another's property, as evidenced by behavior causing, attempting or threatening such injury, abuse or damage; or

"(2) is substantially unable, except for reason of indigency, to provide for any of the person's basic needs, such as food, clothing, shelter, health or safety causing a substantial deterioration of the person's ability to function on the person's own."

Albright alleges the provisions under subsection (g)(1) are unconstitutional as they are violative of due process on two grounds: (1) Due process requires a showing of *immediate* or *present* danger; and (2) due process requires a showing of recent overt act or threat as a basis for concluding danger exists. Specifically, he challenges the wording "in the reasonably foreseeable future" since it allows commitment without a showing that the proposed patient is a *present* danger to himself or to others. Additionally, he claims the wording "as evidenced by behavior causing, attempting or threatening such injury, abuse or damage" is violative of due process as it purports to take into consideration acts that are not recent or overt.

On the other hand, the State contends that in drafting the statute the legislature recognized the very nature of mental illness and the prevention of harm to both society and to a proposed patient requires looking not only at the present situation, but the future. The State argues the legislature intended for the finder of fact to make a judgment as to what is likely to happen in the reasonably foreseeable future.

### A. "Imminent" or "Present" Danger

In support of his argument that the portion of the statute at issue here is unconstitutional, Albright cites to *Suzuki v. Yuen,* 617 F.2d 173 (9th Cir. 1980), where the Ninth Circuit Court of Appeals declared the Hawaii statutory procedure for the involuntary commitment of mental patients unconstitutional. The *Su-*

*zuki* court cited a leading case, *Lessard v. Schmidt,* 349 F. Supp. 1078, (E.D. Wis. 1972), *vacated and remanded for more specific order* 414 U.S. 473 (1974), *order on remand* 379 F. Supp: 1376 (D.C. 1974), *vacated and remanded on other grounds* 421 U.S. 957 (1975), *order reinstated on remand* 413 F: Supp. 1318 (1976), for the proposition that "[t]he proper standard is that which requires a finding of *imminent* and *substantial* danger as evidenced by a recent overt act, attempt or threat." 617 F.2d at 178.

Noting that the Hawaii statute expressly required that there be imminent danger to property, but not imminent danger to self or others, for involuntary commitment, the *Suzuki* court said:

"We agree that the danger must be imminent to justify involuntary commitment. The legislature knew how to require imminence when it wanted to. . . .

"Because it is unconstitutional to commit one who does not pose an imminent danger, the statute as presently worded is unconstitutional." 617 F.2d at 178.

Not all courts, however, are in accord with *Suzuki*. For example, in *In re Harris,* 98 Wash. 2d 276, 282, 654 P.2d 109 (1982), the Supreme Court of Washington said, "[W]e do not feel 'imminent' danger is required as a condition of involuntary commitment." The court further explained it preferred the view that involuntary commitment merely "requires a showing that the potential for doing harm is 'great enough to justify such a massive curtailment of liberty.'" *Harris,* 98 Wash. 2d at 283 (citing *Humphrey v. Cady,* 405 U.S. 504, 509, 31 L. Ed. 2d 394, 92 S. Ct. 1048 [1972]).

The *Harris* court noted that while many courts require a substantial risk of danger to justify involuntary commitment, not all courts require a showing of "imminence." 98 Wash. 2d at 283 (citing *Stamus v. Leonhardt,* 414 F. Supp. 439, 451 [S.D. Iowa 1976] ["pose a serious threat to themselves or others"]; *Doremus v. Farrell,* 407 F. Supp. 509, 515 [D. Neb. 1975] ["poses a serious threat of substantial harm to himself or others"]; and *Lynch v. Baxley,* 386 F. Supp. 378, 391 [M.D. Ala. 1974] [likelihood of inflicting serious harm on himself or on others"]).

The West Virginia Supreme Court in *Hatcher v. Wachtel,* 165 W. Va. 489, 269 S.E.2d 849 (1980), also rejected the proposition

in *Suzuki* that commitment be accompanied by a "present danger." The court said:

> " 'Commitment requires that there be a substantial risk of dangerous conduct within the reasonably foreseeable future. . . . It is not sufficient that the state establish a possibility that defendant might commit some dangerous acts at some time in the indefinite future. The risk of danger, a product of the likelihood of such conduct and the degree of harm which may ensue, must be substantial within the reasonably foreseeable future. . . .
>
> " 'A defendant may be dangerous in only certain types of situations or in connection with relationships with certain individuals. An evaluation of dangerousness in such cases must take into account the likelihood that defendant will be exposed to such situations or come into contact with such individuals.' " *Hatcher,* 165 W. Va. at 492 (citing *State v. Krol,* 68 N.J. 236, 260-61, 344 A.2d 289 [1975]).

The failure of these courts to adopt the reasoning in *Suzuki* dealing with "imminence" might be due to the varying states' choices in determining the degree of danger that it desires to make a part of its statutory scheme. Although it rejected the reasoning in *Suzuki,* the *Harris* court stated that *Suzuki's* requirement of imminence is a "valid constitutional concern for establishing a high standard of danger where the potential deprivation of liberty is great." *Harris,* 98 Wash. 2d at 283.

In essence, Albright urges this court to adopt the *Suzuki* higher standard of danger as part of this State's law for the commitment of mentally ill persons. The statutory provision involved, 59-2902, has undergone many changes in the past 15 years. Amendments made in 1976 provided the higher standard for which Albright argues. Those amendments made the following changes:

"(1) A person who was merely dangerous to property was no longer considered a 'mentally ill person'; (2) the old definition of 'mentally ill person' included a person 'who . . . probably will become dangerous . . .', the new definition deletes the term 'probably will become' and required a finding that the person is presently dangerous." Note, *Senate Bill 26—Mental Patients' Bill of Rights,* 16 Washburn L.J. 149, 150 (1976).

In 1986, the legislature once again amended the statute, in essence going in the opposite direction of the 1976 amendments. The legislature reinserted language referring to damage to property as well as the language at issue here: that "likely to cause harm to self or others" means a person who may cause harm "in

the reasonably foreseeable future." L. 1986, ch. 211, § 2. According to Albright, the legislature removed the mandate that before a civil commitment could take place, the proposed patient must be a *present* danger to self or others.

After the 1976 amendments, which provided for a higher standard of dangerousness, but before the 1986 amendments providing for a lower standard, this court decided *In re Gatson,* 3 Kan. App. 2d 265, 593 P.2d 423 (1979). In *Gatson,* this court construed the 1976 amendments to the statute and found that an involuntary commitment must be accompanied by a *present* danger:

> "[W]e agree with appellant that a finding of present dangerousness to self or others, coupled with a finding of mental impairment, is required before treatment may be ordered. Although the determination will of necessity be on a case-by-case method, *we believe a showing of present dangerousness will normally require evidence of a recent act, attempt, threat or omission of a serious nature."* (Emphasis added.) 3 Kan. App. 2d at 267.

*Gatson,* then, seems to have adopted the same higher standard of danger as *Suzuki* in the involuntary commitment of a mentally ill person. It did so even in the absence of the express language ("present danger", "overt act") in the statute. *Gatson* required both present dangerousness and a recent overt act of a serious nature. By virtue of this language, this court seemed to have adopted the higher standard of danger urged by Albright. The present statute, however, does not expressly require a showing of present danger or a recent overt act. It, therefore, appears that the legislature adopted the *Harris* lower standard of danger when it made the 1986 amendments. The present language would not seem to support appellant's interpretation of requiring a showing of imminent or present danger. *Gatson* was based on the 1976 language which has been superseded by the 1986 language.

### B. "Recent" or "Overt" Act

Albright additionally alleges that the statute as it reads now does not require a showing of a recent overt act and is, therefore, unconstitutional. Specifically, he argues that the phrase "as evidenced by behavior causing, attempting or threatening such injury, abuse or damage," is subject to the same criticism as the phrase "in the reasonably foreseeable future" since it does not require a finding of immediacy.

In support of this contention, Albright cites to *Lessard v. Schmidt*, 349 F. Supp. at 1093, which states: "[Civil confinement can be justified in some cases if . . . dangerousness is based upon a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another."

Many courts, in fact, have required proof of "a recent overt act" to justify a finding of dangerousness. See *Stamus v. Leonhardt*, 414 F. Supp. at 451; *Lynch v. Baxley*, 386 F. Supp. at 391. On the other hand, at least one court has held that a statute which does not include an overt act requirement still meets minimum due process standards. *Project Release v. Prevost*, 722 F.2d 960, 973-74 (2d Cir. 1983).

The Washington statute that was discussed in *In re Harris* did *not* expressly require proof of a recent overt act for commitment. The court, however, recognized that "evidence must be recent to be meaningful." *Harris*, 98 Wash. 2d at 284. It thus interpreted the statute as requiring a showing of substantial risk of physical harm, as evidenced by a recent overt act.

Likewise, this court in *Gatson* adopted this stance. In *Gatson*, this court noted that the Nebraska, Iowa, and Hawaii involuntary commitment statutes have been held unconstitutional since they did not require a finding of dangerousness as evidenced by a recent overt act, attempt, or threat. This court was satisfied that the legislature crafted the 1976 amendments out of a general concern for the result in those cases. We thus concluded that present dangerousness is normally evidenced by a "recent act, attempt, threat or omission of a serious nature." *Gatson*, 3 Kan. App. 2d at 267. As stated above, this decision was based on the 1976 language which has been superseded.

In summary, Albright's argument basically revolves around the conflicts inherent in this court's 1979 holding in *Gatson* and the legislature's 1986 amendments. The dangerousness standard in the 1976 statute and *Gatson* is a high standard. The legislature then changed the statute to require a lower standard of danger be shown.

We find the present statute to be constitutional based on *Harris* and the other cases cited above which have held similarly drafted statutes to comport with due process. This is an extremely difficult area touching on sensitive and important issues. Our legislature

experimented with stricter standards for involuntary treatment and arrived at the present rules after 10 years' experience. Reasonable minds could differ on the approach but it is assuredly constitutional.

Since the statutory approach is constitutional, we need not deal with defendant's proposed instruction to supply a constitutional interpretation.

The evidence presented at trial was sufficient to satisfy the requirements of the present statute. The finding of the jury and the order for treatment are affirmed.