197 P.3d 750 (2008)
In re MH XXXX-XXXXXX.
No. 1 CA-MH 07-0010.
Court of Appeals of Arizona, Division 1, Department B.
June 3, 2008.
Review Denied December 4, 2008.
Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorney for Appellant.
Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Andrea L. Cummings, Deputy County Attorneys, Phoenix, Attorneys for Appellee.

OPINION
IRVINE, Judge.
¶ 1 Nancy M. appeals the superior court's order finding her persistently or acutely disabled due to a mental disorder and ordering her to undergo a combined program of inpatient and outpatient treatment. She argues she was involuntarily removed from her involuntary treatment hearing without receiving a warning that her disruptive behavior *751 could lead to her removal. We hold that a court may remove a patient from a commitment hearing due to the patient's disruptive behavior caused by medical reasons and it is within the court's discretion to determine the form of the warning under the particular circumstances at the time.

FACTS AND PROCEDURAL HISTORY
¶ 2 In May, 2007, pursuant to Arizona Revised Statutes (A.R.S.) sections 36-529 and 36-535 (2003), the Maricopa County Superior Court scheduled a hearing to determine if Nancy M. was persistently and acutely disabled and whether she should receive involuntary treatment. Even though Nancy had been detained to secure her attendance at the hearing, she refused to attend. To ensure Nancy's attendance, her hearing was scheduled againfor the next dayat the facility where she was being detained.
¶ 3 At the hearing, Nancy and the County agreed to stipulate to the admission of affidavits in lieu of testimony from two doctors who had examined Nancy prior to the hearing. Dr. Jacqueline Flynn's affidavit stated Nancy was persistently or acutely disabled. Nancy had a thirty-year history of psychiatric treatment and she was extremely disorganized, loud, aggressive, psychotic, and delusional. She had also threatened her case manager and the staff at her group home. Dr. Samuel P. Hand's affidavit stated that Nancy was in need of inpatient psychiatric stabilization. He observed that she had exhibited suicidal and homicidal ideations and delusions when she was examined. He concluded that Nancy was persistently or acutely disabled.
¶ 4 Two witnesses were scheduled to testify at the hearing. As the first witness began her testimony, Nancy interrupted:
[Nancy]: Get me out of here.
[County Attorney]: Okay.
[Nancy]: I won't stay with you. That's what the problem is. She has nevershe is going in there and see what is in there. Go in there and stay in there. Get away.
When the County Attorney resumed her questioning of the witness, Nancy again interrupted:
[Nancy]: I don't want a goddamned new one. I don't want a goddamned
The Court: Just a second.
[Nancy]: What?
The Court: [Ms. M.], can I ask you to be quiet, please?
[Nancy]: I don't want to be quiet in here.
The Court: [Ms. M]?
[Nancy]: Let go of me. He's hanging onto me like the rug. He's crazy.
The Court: [Ms. M.]?
[Nancy]: He's crazy. He's a madman.
Court: [Ms. M.]?
[Nancy]: What do you want now, more frigging blood? Leave me alone. I want to think. I want to hear. I want to see light. I don't want to die a slow death
The Court: [Ms. M.] I'm going to have to ask you to leave, please.
Nancy continued to speak as she was removed from the hearing room.
¶ 5 After Nancy was removed from the hearing room, her attorney said that he was not sure that Nancy had "knowingly and intelligently, voluntarily" removed herself from the hearing and that he was not sure that the proceedings could continue without Nancy in attendance. The court stated:
[Nancy] clearly did not waive her presence. Her actions were disruptive and would not allow the proceeding to continue with the words she was using and the volume that she was using and she was not going to stop doing that. So I removed her so that the proceeding could continue in her absence.
Nancy's attorney then attempted, we believe, to state that he did not think Nancy's actions were voluntary[1] and he stated that they were a product of her "problems." The judge said that that was "probably correct."
¶ 6 Nancy's attorney asked the court to dismiss the petition for involuntary treatment *752 because Nancy had not been present for the hearing and the court implicitly denied the request when it found there was clear and convincing evidence that Nancy was persistently or acutely disabled. The court ordered Nancy to receive treatment for up to one year with up to 180 days on an in-patient basis. Nancy timely appealed. We have jurisdiction under A.R.S. §§ 12-2101(K)(1) and 36-546.01 (2003).

DISCUSSION
¶ 7 On appeal, Nancy argues that the superior court's order for involuntary treatment must be vacated. She argues her right to due process was violated because she did not voluntarily waive her right to be present at the hearing and the court did not warn her she could be removed for her disruptive behavior before it removed her. The County responds that, unlike criminal proceedings, a superior court conducting a hearing pursuant to A.R.S. § 36-539 (2003) is not required to issue a warning before removing a disruptive patient from a hearing and that the court has inherent power to remove disruptive parties. The interpretation and application of a statute is a question of law that we review de novo. In re M.H. XXXX-XXXXXX, 214 Ariz. 318, 321, ¶ 13, 152 P.3d 1201, 1204 (App. 2007).
¶ 8 Because court-ordered involuntary treatment constitutes "a serious deprivation of liberty," a person facing civil commitment must be afforded due process, including "[a] full and fair" adversarial hearing. Id. at ¶ 14 (quoting Parham v. J.R., 442 U.S. 584, 627, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Brennan, J., concurring in part and dissenting in part) and In re MH 1425, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995)). Arizona Revised Statutes § 36-539(B) outlines Arizona's procedural requirements for an involuntary treatment hearing. It provides, among other things, that "[t]he patient and his attorney shall be present at all hearings...."
¶ 9 Our first step in interpreting a statute is looking at "the language of the statute as the most reliable indicator of its meaning." Obregon v. Indus. Comm'n of Ariz., 217 Ariz. 612, 614, ¶ 11, 177 P.3d 873, 875 (App.2008). Statutory language that is clear and unambiguous leads us to apply the plain and ordinary meaning of that language unless doing so would create an absurd result. State v. Hasson, 217 Ariz. 559, 562, ¶ 11, 177 P.3d 301, 304 (App.2008). See also Morrison v. Anway, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions.")
¶ 10 Although § 36-359(B) may seem to require a patient's presence at her hearing, we have held that the right to attend one's hearing is a right the patient may waive as long as the court expressly finds that the waiver is knowing and intelligent. M.H. XXXX-XXXXXX, 214 Ariz. at 324, ¶ 27, 152 P.3d at 1207. However, the court may not force a patient who is "unduly agitated" and unable to make a valid waiver to stay at the hearing. Id. at n. 6. Section (B) does not address the issue of whether a disruptive patient may be involuntarily removed and whether she must receive a warning about her behavior before removal. The plain language of § 36-359(B), therefore, does not provide a basis for permitting involuntary removal or requiring a pre-removal warning to disruptive patients.
¶ 11 Arizona courts have not directly addressed whether the removal of a disruptive patient from an involuntary treatment hearing against her will is a violation of her right to due process. Section (C) of 36-539 states that "[i]f the patient, for medical reasons, is unable to be present at the hearing and the hearing cannot be conducted where the patient is being treated or confined" the hearing may "proceed" in the patient's absence if the court finds "clear and convincing evidence that the patient is unable to be present at the hearing." Thus, section (C) permits hearings to go forward without the patient when she cannot attend due to medical reasons. We believe medical reasons include a situation where the patient's mental illness may result in behavior so disruptive that the hearing must take place without her. Other jurisdictions that have addressed whether disruptive patients may be removed have *753 also concluded removal does not violate the patient's right to due process.[2]
¶ 12 Here, Nancy concedes that a patient may be removed from an involuntary commitment hearing for disruptive behavior but argues that the court must first give the patient a chance to conform his or her behavior by warning that continued disruption could lead to removal. Nancy contends that Arizona Rule of Criminal Procedure 9.2(a), which requires a warning before removing a disruptive defendant in a criminal proceeding, is instructive for involuntary treatment hearings.[3] The County responds that § 36-539 hearings are civil in nature; therefore, the Arizona Rules of Criminal Procedure do not apply.
¶ 13 An involuntary treatment hearing is a civil proceeding, not criminal. In re Jesse M., 217 Ariz. 74, 76, ¶ 9, 170 P.3d 683, 685 (App.2007). Section 35-539(D) states that "[t]he requirements of [36-539] subsection B are in addition to all rules of evidence and the Arizona rules of civil procedure, not inconsistent with subsection B." Therefore, the procedural rules for involuntary commitment hearings are civil and not criminal. See State ex rel. Ariz. Dept. of Health Servs. v. Gottsfield, 213 Ariz. 583, 585, ¶ 7, 146 P.3d 574, 576 (App.2006) (rejecting argument that civil proceedings involving sexually violent persons should apply criminal rules because the proceedings are analogous to criminal trials). Because there is no Arizona rule of civil procedure that addresses removal from a proceeding with or without a warning, civil procedural rules do not provide a basis for requiring a warning. We also note that the jurisdictions that have determined a court may remove disruptive patients from commitment hearings did not address the warning issue and therefore did not impose a warning requirement.[4]
¶ 14 We recognize that it would be desirable for the court to issue a warning *754 before removing a disruptive patient from the hearing. As previously discussed, we have held that a hearing may proceed in a patient's absence when the court expressly finds that the patient voluntarily and intelligently waives her right to be present. Part of making an intelligent waiver includes having knowledge that failure to comport oneself in a manner appropriate for a hearing may lead to removal. A court-issued warning provides the patient with that knowledge. Therefore, the best practice is for the court to issue the disruptive patient a warning that failure to comport herself appropriately may lead to her removal from the hearing.
¶ 15 Nevertheless, a court-issued warning may not always be recognized or understood by a patient. The purpose of an involuntary treatment hearing is to determine whether a patient "is a danger to self, is a danger to others, is persistently or acutely disabled or is gravely disabled and in need of treatment, and is either unwilling or unable to accept voluntary treatment" as the result of a mental disorder. A.R.S. § 36-540(A) (2003). The court must have the discretion, therefore, to determine whether its attempts to warn the patient were adequate under the circumstances when determining whether to proceed with a hearing after removing a disruptive patient. Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations."); State v. Delvecchio, 110 Ariz. 396, 400, 519 P.2d 1137, 1141 (1974) ("[A trial judge] is allowed to take those necessary measures to provide for the orderly disposition of criminal cases."); Aragon v. Wilkinson, 209 Ariz. 61, 66, ¶ 15, 97 P.3d 886, 891 (App.2004) (recognizing trial court's inherent authority to conduct proceedings necessary to exercise its jurisdiction).
¶ 16 Here, after asking Nancy "to be quiet," the court attempted to speak to her four additional times. Each time, Nancy ignored the court and continued to disrupt the hearing. The trial court apparently then considered it futile to continue its attempts to interject over Nancy's outburst. Under the circumstances, we find no error in that decision. Therefore, it was within the court's discretion to remove Nancy involuntarily and to continue the hearing in Nancy's absence pursuant to § 36-539(C).

CONCLUSION
¶ 17 It was permissible for the court to remove Nancy from her involuntary commitment hearing after she refused to or was unable to stop disrupting it. It was within the court's discretion to remove her although a specific warning was not issued because the court asked her to be quiet and attempted to address her behavior with her multiple times prior to removal. We affirm.
CONCURRING: DANIEL A. BARKER, Presiding Judge, and DIANE M. JOHNSEN, Judge.
NOTES
[1] He said, "I think that she did so because of her, her problems, Your Honor, and not due to involuntary [sic] actions on her behalf."
[2] Tyars v. Finner, 709 F.2d 1274, 1276, 1284 (9th Cir. 1983) (holding that, in a civil commitment hearing, the "[s]hackling, restraining or even removing a respondent from the courtroom must be limited to cases urgently demanding that action...."); Suzuki v. Quisenberry (Suzuki I), 411 F.Supp. 1113, 1130 (D.Haw.1976) affirmed in part, reversed in part and dismissed in part, 617 F.2d 173 (9th Cir. 1980) ("[A] committing court may exclude a respondent where his presence makes it impossible to conduct the hearing in a reasonable manner...."); Doremus v. Farrell, 407 F.Supp. 509, 515 (D.Neb.1975) ("The subject has a constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion."); Kendall v. True, 391 F.Supp. 413, 419 (W.D.Ky.1975) (interpreting the minimum requirements of due process at a commitment hearing to include "[t]he right of the patient to be present at both hearings, unless the right is intelligently waived by himself and counsel, or unless the Court makes a specific finding after the patient has been brought to the place of hearing that he should be removed from the hearing because his conduct is so disruptive that the proceeding cannot continue in any reasonable manner"); Bell v. Wayne County Gen. Hosp., 384 F.Supp. 1085, 1094 (E.D.Mich.1974) ("Under Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)[,] a criminal defendant may be removed from trial where his conduct is so disruptive that the proceeding cannot continue in any reasonable manner. In our view a respondent may be removed from commitment proceedings under similar circumstances...."); In re Barbara H., 288 Ill.App.3d 360, 223 Ill.Dec. 738, 680 N.E.2d 471, 475 (1997) affirmed in part and reversed in part, 183 Ill.2d 482, 234 Ill.Dec. 215, 702 N.E.2d 555 (1998) ("[A] respondent who has not waived his presence may lose his right to be present if his conduct is so disruptive as to require his exclusion."). See Toliver v. State, 638 S.W.2d 122, 124 (Tex.App.1982) (holding that a court may not exclude a patient from her involuntary commitment proceeding on the speculation that she will disrupt the hearing).
[3] Arizona Rule of Criminal Procedure 9.2(a) states "[a] defendant who engages in disruptive or disorderly conduct after having been warned by the court that such conduct will result in the defendant's expulsion from a proceeding shall forfeit his or her right to be present at that proceeding."
[4] The sole case which discussed the warning issue did not address it in its holding. In Tyars, the court found that the record did not reflect the respondent in an involuntary commitment hearing was warned he could be restrained if he exhibited "disruptive behavior" and that he was prejudiced by being physically bound in the presence of the jury as he slept through the proceedings. The court held that absent evidence restraints were necessary or that less prejudicial means would not have sufficed, Tyars was deprived of the "appearance of evenhanded justice which is at the core of due process." 709 F.2d at 1284-85.