Nos. 2--96--0956, 2--96--0957 cons.

                                                                           

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

In re BARBARA H.,                    )  Appeal from the Circuit Court

Alleged to be a Person in            )  of Kane County.

Need of Involuntary Admission   )  

and Involuntary Psychotropic    )  Nos. 96--MH--285,

Medication                      )       96--MH--287

                                )

                                )  

(The People of the State of     )                           

Illinois, Petitioner-Appellee,  )  Honorable

v. Barbara H., Respondent-      )  James C. Hallock, 

Appellant).                     )  Judge, Presiding.   

______________________________________________________________

     

     JUSTICE COLWELL delivered the opinion of the court:

                                     

     This case is a consolidated appeal.  The State filed two

petitions concerning Barbara H.  First, the State sought to admit

Barbara H. to a mental health facility involuntarily pursuant to

the Mental Health and Developmental Disabilities Code (Code)  (405

ILCS 5/3--100 et seq. (West 1994)).  Second, the State sought to

administer psychotropic medication to Barbara H.  See 405 ILCS 5/2-

-107.1 (West 1994).

     At a hearing at which the respondent was not present, the

trial court granted the State's petition to involuntarily admit her

to Elgin Mental Health Center (Center) for a period not to exceed

90 days.  Further, the court found that the benefits of

psychotropic medication outweighed any harm and allowed the Center

to administer psychotropic medication to Barbara H. for a period

not to exceed 90 days.

     On appeal, the respondent argues that the trial court's orders

granting her involuntary admission and authorizing the use of

psychotropic medication must be reversed because she was not

advised of the consequences of her failure to attend the hearing. 

Additionally, Barbara H. contends that the order authorizing

psychotropic medication should be reversed because (1) the Code

requires separate hearings for petitions for admission and

petitions for medication; and (2) the State did not present

sufficient evidence that she lacked the capacity to reasonably

refuse the medication.  We reverse and remand.

     The record shows that on August 2, 1996, the trial court held

a joint hearing on the State's petition to involuntarily admit

Barbara H. and the State's petition to involuntarily administer

psychotropic medication to the respondent.  At the beginning of the

hearing, the trial court noted that the respondent was absent and

asked the respondent's attorney, an assigned public defender, if he

was waiving his client's presence.  The public defender stated that

an investigator and a student law clerk attempted to speak with

Barbara H., but that Barbara H. refused to talk to them.  The

public defender added that Barbara H. stated that she was

represented through the "Catholic Charities Association" and told

the investigator and the student that she refused to come to court. 

The public defender then stated that if he was "in fact going to

represent her today [he] would then waive her presence based upon

that."

     At that point, the trial court interrupted the public defender

to ask again whether he was waiving his client's presence.  The

public defender added that he believed that having Barbara H. in

court "would be detrimental to her physical and emotional well-

being."  The trial court again requested the public defender to

answer "[y]es or no" to whether he was waiving his client's

presence.  The public defender then stated that he waived Barbara

H.'s presence.

     Only one witness testified at the hearing.  Dr. Farsana Husain

testified that she is a staff psychiatrist at the Center.  Dr.

Husain stated that she was unable to perform a psychiatric

examination of Barbara H. because on three occasions Barbara H.

refused to talk to her.  Accordingly, her diagnosis of the

respondent was based on her review of the medical records,

conversations with the staff, personal observations, and her past

experience with the respondent when Barbara H. was her patient for

a six-month period ending in May 1996. 

     Dr. Husain diagnosed Barbara H. with schizoaffective disorder,

bipolar type.  Dr. Husain explained that the respondent's disorder

had two components to it: psychotic disturbance and mood

disturbance.  Overall, Dr. Husain said that Barbara H. "is not in

touch with reality.  She is delusional."  Dr. Husain added that the

respondent's mood ranged between being depressed, getting angry,

and becoming agitated.

     Dr. Husain testified that Barbara H. had been living "at

placement" in association with Northwest Community Mental Health

Center.  Dr. Husain explained that Barbara H. was returned to the

Center because she refused to take her medication, she believed

people were poisoning her, and she falsely thought she was

pregnant.  Dr. Husain stated that upon returning to the Center

Barbara H. was "very filthy and poorly dressed and groomed."  Dr.

Husain added that in a structured environment Barbara H. takes care

of herself with some prompting, but independently she has not been

able to care for herself.

     Dr. Husain testified that Barbara H. has diabetes.  Dr. Husain

stated that the respondent voluntarily takes medication for her

diabetes, but refuses to take medication for her mental illness.  

     Dr. Husain said that she did not believe that Barbara H. could

manage her financial affairs if she were discharged because

"historically" Barbara H. had been unable to manage her financial

affairs on her own.  Dr. Husain stated that she "had no knowledge"

of whether Barbara H. would be able to find food for herself on her

own if she were discharged.  Overall, however, Dr. Husain

acknowledged that she believed the respondent to be mentally ill

and because of her illness she was unable to provide for her basic

physical needs so as to guard herself from serious harm. 

Specifically, Dr. Husain noted that Barbara H. still refused to

take her medication and therefore in her opinion the respondent

would not be able to function on "the outside."

     Finally, Dr. Husain testified that Barbara H.'s ability to

function had deteriorated.  Dr. Husain stated that the respondent

did not understand her illness and had "very poor insight" into her

illness.  Dr. Husain said that Barbara H. had been admitted 11

times since 1980 and that within the last four to five years her

condition had been deteriorating.

     Dr. Husain next testified to Barbara H.'s history with

psychotropic medication.  Dr. Husain stated that when taking

psychotropic medication in the past the respondent had never

experienced side effects.  Dr. Husain added that when taking the

medication Barbara H. became more sociable and her mood became

stable.  Further, while on the psychotropic medication, Barbara H.

was able to care for herself and did not need prompting. 

Accordingly, Dr. Husain stated that in her opinion the benefits of

psychotropic medication outweighed the harm.  

     Dr. Husain then added that she believed that due to her

delusional state Barbara H. did not have the capacity to make a

reasoned decision about the psychotropic medication.  Dr. Husain

explained that the respondent had "decompensated" and that her

judgment and insight were "very poor."  Dr. Husain acknowledged

that Barbara H. understood that she had the right to refuse

medication, but stated that she did not believe that Barbara H.

understood the benefits of the medication.  Additionally, Dr.

Husain described the psychotropic medication that had stabilized

Barbara H.'s condition in the past and stated that she would

administer those same drugs to the respondent.

     On cross-examination, Dr. Husain acknowledged that her

diagnosis was not based on counseling sessions or interviews with

Barbara H., but through her review of charts and her personal

experience.  Dr. Husain explained that Barbara H. had been

involuntarily committed in the past but was discharged several

times because the medication had stabilized her.  Finally, Dr.

Husain described that the last time she treated Barbara H. it took

six months before Barbara H. stabilized because she refused to take

her medication.

     On appeal, Barbara H. argues that the trial court's orders

granting her involuntary admittance to the Center and the

administration of psychotropic medication should be reversed. 

Primarily, Barbara H. contends that the orders should be reversed

because section 3--806 of the Code, which governs the waiver of a

respondent's presence at a hearing, is unconstitutional because it

allows a hearing to proceed in a respondent's absence without the

respondent having been told that the hearing may proceed without

him or her.  See 405 ILCS 5/3--806 (West 1994).  

     We note also that Barbara H. alleges that the court's

authorization of psychotropic medicine was erroneous because the

State failed to prove by clear and convincing evidence all the

factors listed in the Code regarding administering psychotropic

medicine against a respondent's will.  See 405 ILCS 5/2--107.1

(West 1994).  Further, Barbara H. contends that the order

authorizing psychotropic medication should be reversed because the

Code mandates that hearings for admittance and hearings for

medication be held separately, and in this case the trial court

held one combined hearing.    

     As the constitutionality of section 3--806 of the Code affects

both issues on appeal, we will address that issue first.  Courts

presume statutes are constitutional and will construe them so as to

uphold them when it is reasonably possible to do so.  Wilson v.

Department of Revenue, 169 Ill. 2d 306, 310 (1996).  A statute is

facially unconstitutional only if " 'no set of circumstances exists

under which the Act would be valid.' "  In re C.E., 161 Ill. 2d

200, 210-11 (1994), quoting United States v. Salerno, 481 U.S. 739,

745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100  (1987).       

     When deciding whether a statutory procedure affords procedural

due process, courts must take three factors into account: the

private interest that will be affected by the action; the risk of

erroneous deprivation of such interest through the procedures used

and the probable value, if any, of additional or substitute

procedural safeguards; and the government's interest, including the

function involved and the fiscal and administrative burdens that

the additional or substitute procedural requirement would entail. 

Mathews v. Eldridge, 424 U.S. 319, 335, 47 L. Ed. 2d. 18, 33, 96 S.

Ct. 893, 903 (1976).  Overall, to survive a facial challenge, the

procedures a statute provides must at least be adequate to

authorize the liberty deprivation with respect to some of the

persons subject to it.  See United States v. Salerno, 481 U.S. 739,

95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987).  Finally, the standard of

review for determining whether constitutional rights have been

violated is de novo.  People v. Anaya, 279 Ill. App. 3d 940 (1996).

     At issue in this case is section 3--806 of the Code, which

outlines the procedures regarding a respondent's presence at a

hearing.  Section 3--806 states:

          "(a) The respondent shall be present at any hearing held

     under this Act unless his attorney waives his right to be

     present and the court is satisfied by a clear showing that the

     respondent's attendance would subject him to substantial risk

     of serious physical or emotional harm.

          (b) The court shall make reasonable accommodation of any

     request by the recipient's attorney concerning the location of

     the hearing.  If the recipient's attorney advises the court

     that the recipient refuses to attend, the hearing may proceed

     in his or her absence.

          (c) No inference may be drawn from the recipient's non-

     attendance pursuant to either subsection (a) or (b) of this

     Section."  405 ILCS 5/3--806 (West Supp. 1995).

     When approving the defense attorney's waiver of Barbara H.'s

presence at the hearing, the trial court did not state under which

subsection of section 3--806 it allowed the waiver.  Barbara H.

argues, however, that both subsection (a) and subsection (b) are

unconstitutional, so regardless of the section the trial court

applied, the orders granting the State's petitions must be

reversed.  We will discuss the constitutionality of section 3--

806(a) first.

     Barbara H. contends that section 3--806(a) is unconstitutional

because it requires only that a respondent's attorney waive a

respondent's right to be present at a hearing.  Barbara H. argues

that, because being present at a civil commitment hearing is a

fundamental constitutional right, she is the only one who could

waive her right to be present.  Such a waiver is only possible,

Barbara H. contends, after she is made aware of her right to be

present at the hearing and knows the consequences of a waiver--

namely, that the hearing may proceed without her.  We agree.

     It is undisputed that a significant due process liberty

interest exists to be free from unjustified civil commitment and 

to refuse unwanted, nonemergency psychotropic medication.  See

Ingraham v. Wright, 430 U.S. 651, 51 L. Ed. 2d 711, 97 S. Ct. 1401

(1977); In re Branning, 285 Ill. App. 3d 405 (1996).  Indeed,

respondents in civil commitment hearings have a constitutional

right to attend their hearings.  Vitek v. Jones, 445 U.S. 480, 63

L. Ed. 2d 552, 100 S. Ct. 1254 (1980).  Respondents, however, may

waive their constitutional rights.  People v. Johnson, 75 Ill. 2d

180, 187 (1979).  To be valid, waivers of constitutional rights "

'not only must be voluntary but must be knowing, intelligent acts

done with sufficient awareness of the relevant circumstances and

likely consequences.' "  Johnson, 75 Ill. 2d at 187, quoting Brady

v. United States, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S.

Ct. 1463, 1469 (1970).  Therefore, a respondent has a

constitutional right to be present at a civil commitment hearing

unless he voluntarily, intelligently, and knowingly waives it.  See

Kendall v. True, 391 F. Supp. 413, 419 (W.D. Ky. 1975) (discussing

a Kentucky statute).  Of course, a respondent who has not waived

his presence may lose his right to be present if his conduct is so

disruptive as to require his exclusion.  See Illinois v. Allen, 397

U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970); Kendall, 391 F.

Supp. at 419.

     In the present case, both parties acknowledge that the due

process clause of the fourteenth amendment applies to involuntary

commitment proceedings.  Barbara H. argues that section 3--806(a)

violates procedural due process because it allows her attorney to

waive one of her constitutional rights.  The State, however,

contends that there are procedural safeguards in section 3--806(a)

that adequately protect Barbara H.'s due process interests. 

Accordingly, the controversy in this case centers around the

minimal constitutional standards required to protect a respondent's

liberty interest.

     Under section 3--806(a), a civil commitment hearing may occur

without a respondent, even if that respondent wishes to attend the

hearing.  If the trial court is satisfied by a clear showing that

the respondent's presence would subject him to substantial risk of

serious harm, the trial court may accept a waiver by the

respondent's attorney.  We find that this procedure fails

adequately to protect a respondent's liberty interest. 

Particularly, we find that the statute's procedures

unconstitutionally allow a hearing to take place without the

respondent even when a respondent has not waived his presence at

that hearing.

     A recent decision concerning the constitutionality of another

section of the Code provides some guidance to our analysis.  In In

re Branning, 285 Ill. App. 3d 405 (1996), the Appellate Court,

Fourth District, determined that section 2--110 of the Code

violated procedural due process.  Section 2--110 of the Code

concerns when a facility may treat a respondent with electro-

convulsive therapy (ECT).  Under section 2--110, a respondent's

guardian may give consent to such treatment if the guardian deems

it "to be in the best interests of the ward."  See 405 ILCS 5/2--

110 (West 1994).  

     The Branning court determined that this procedure violated due

process because it did not provide sufficient protections to a

respondent.  The court explained that the statute did not specify,

among other things, the level of evidence by which anything must be

proved, exactly what needed to be proved, input from a healthcare

professional, or proof that the respondent was unable to make a

rational choice for himself.  Instead, the statute's only

requirement for the administration of ECT was that the guardian

consented and that the guardian believed that the ECT was in the

ward's best interest.  See Branning, 285 Ill. App. 3d at 413.

     The most significant omission present in section 2--110 is

present also in section 3-806(a).  Indeed, section 3--806(a) does

not require that the court make a finding that the respondent is

unable to make a rational choice before allowing his counsel to

waive his attendance at the hearing.  Further, section 3--806(a)

does not require input from a healthcare professional that the

respondent is unable to make a rational choice concerning his

presence at the hearing, or even that the respondent's presence

will cause harm.  Instead, section 3--806(a) requires only that the

respondent's attorney show that the respondent's presence would

cause harm.  We find that such a procedure is not adequate to

protect the liberty interests of the respondent.

     Several federal court decisions involving similar statutes in

other states support our conclusion that section 3--806(a) is

unconstitutional.  First, in Doremus v. Farrell, 407 F. Supp. 509

(D. Neb. 1975), the court was presented with a Nebraska statute

that outlined the procedures for a subject's presence at his

commitment hearing.  The statute stated that if the County Board of

Mental Health " 'decide(s) that the presence of the proposed

patient is unnecessary or would probably be injurious to him, the

board members shall not require the proposed patient to be present

at the hearing on the application.' "  Doremus, 407 F. Supp. at

515.  The federal court held that this procedure was

unconstitutional.  The court explained that the subject had a

"constitutional right to be present at the hearing unless he

voluntarily, intelligently and knowingly waives it or his counsel

waives it for him after a showing that he is incompetent, or the

subject's conduct is so disruptive as to require his exclusion." 

Doremus, 407 F. Supp. at 515.  Accordingly, as the Nebraska statute

had allowed a hearing regarding the subject to proceed without the

subject and without the subject's waiver, it was deemed

unconstitutional.  See Doremus, 407 F. Supp. at 515-16.

     Similarly, in Suzuki v. Quisenberry, 411 F. Supp. 1113, 1129

(D. Haw. 1976), the court stated that "[d]ue process requires the

presence of the person proposed to be committed at all judicial

proceedings conducted for that purpose."  The Suzuki court

explained that waiver was possible, but would only be valid "upon

acceptance by the court following a judicial determination that the

person understands his rights and is competent to waive them or

that the person is so mentally or physically ill as to be incapable

of attending the proceedings."  Suzuki, 411 F. Supp. at 1129.

     Moreover, in Bell v. Wayne County General Hospital, 384 F.

Supp. 1085 (E.D. Mich. 1974), the court found a Michigan commitment

statute unconstitutional.  The statute provided that an individual

had a right to be present at a commitment hearing unless the court,

either by certificate of the medical superintendent in charge of

the hospital admitting the patient or by certificate of two other 

physicians, deemed that the individual's presence would be

"improper and unsafe."  Bell, 384 F. Supp. at 1094.  The Bell court

explained that the Michigan statute was unconstitutional.  The

court first stated that the due process right of a respondent to be

present at a commitment hearing was at least as broad as the right

of a criminal defendant to be present at trial.  The Bell court

explained:

     "Under Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057, 25 L.

     Ed. 2d 353 (1970) a criminal defendant may be removed from

     trial where his conduct is so disruptive that the proceeding

     cannot continue in any reasonable manner.  In our view a

     respondent may be removed from commitment proceedings under

     similar circumstances, but to exclude the respondent as

     provided above violates due process.  *** While a committing

     court may exclude a respondent where his presence makes it

     impossible to reasonably conduct the hearing, it may not

     decide in advance of hearing and based solely on the

     certificate of physicians, that he shall not be allowed to

     appear.  Where his removal to the courthouse would be

     'improper and unsafe,' some method alternative to total

     exclusion must be attempted first ***."  Bell, 384 F. Supp. at

     1094.

     Similarly, in Kendall v. True, 391 F. Supp. 413, 419 (W.D. Ky.

1975), the court explained that a Kentucky statute that provided

that the court psychiatrist determine whether a patient be present

at his commitment hearing was "woefully deficient" in procedural

due process aspects.  The court explained that the "minimum

requirements of due process" require the right of the patient to be

present at the hearing, "unless the right is intelligently waived

by himself and counsel, or unless the Court makes a specific

finding after the patient has been brought to the place of [the]

hearing that he should be removed from the hearing because his

conduct is so disruptive that the proceeding cannot continue in any

reasonable manner."  Kendall, 391 F. Supp. at 419.

     Finally, the United States Supreme Court has stated that to

afford sufficient protection to a liberty interest to a prisoner

being transferred to a mental hospital, the prisoner must receive

notice of the commitment hearing and have an opportunity to be

present at the hearing.  See Vitek, 445 U.S. at 494, 63 L. Ed. 2d

at 565-66, 100 S. Ct. at 1264.  In discussing that the prisoner in

Vitek had a right to attend the hearing and present evidence, the

Supreme Court explained that the State's interest in avoiding

disruption was recognized by limiting, in appropriate

circumstances, the prisoner's right to call, confront, and cross-

examine witnesses.  Vitek, 445 U.S. at 496, 63 L. Ed. 2d at 567,

100 S. Ct. at 1265.  Accordingly, although the Supreme Court never

specifically addressed the issue of waiver, it did state that a

prisoner's constitutional right to be present at a civil commitment

hearing could be curbed if the court deemed his conduct too

disruptive.  See Vitek, 445 U.S. at 496, 63 L. Ed. 2d at 567, 100

S. Ct. at 1265.   

     We find the Doremus, Kendall, Suzuki, and Bell courts'

interpretation of the federal constitution and the minimum

protections required to protect an individual's liberty interest

compelling.  Further, we find that the only limitation placed on an

individual's constitutional right to attend his civil commitment

hearing thus far is the state's interest that the individual may

disrupt court proceedings.  See Vitek, 445 U.S. at 495-97, 63 L.

Ed. 2d at 566-67, 100 S. Ct. at 1265-66.  As a result, we find

that, because section 3--806(a) provides for a civil commitment

hearing to take place without the respondent's waiver and for

reasons other than the respondent's behavior being so disruptive

that it interferes with the court proceedings, it violates the

respondent's due process rights, thereby being unconstitutional. 

     The State argues that this court should rely on French v.

Blackburn, 428 F. Supp. 1351 (M.D.N.C 1977), aff'd, 443 U.S. 901,

61 L. Ed. 2d 869, 99 S. Ct. 3091 (1979), which held constitutional

a North Carolina statute that allowed an individual's presence at

a hearing to be waived by the submission of a written statement by

his counsel that was approved by the court.   We decline to compare

the North Carolina statute to section 3--806(a) or comment on its

constitutionality.  Section 3--806(a) does not require a written

statement by an attorney.  Further, we find the discussion of the

minimum due process procedures required in civil commitment

hearings in Doremus, Kendall, Suzuki, and Bell more helpful to our

analysis in this case.

     Additionally, the State argues that to require a mental health

patient to waive his right to be present at a hearing would be

"unrealistic" and "may well prove impossible" because most mental

health patients do not have the capability to make a waiver. 

Further, the Attorney General contends that requiring admonishments

to the respondent would not "have any value" in safeguarding a

respondent's liberty interest and would actually impede the State's

parens patriae interest.

     We find these arguments unpersuasive.  Both the State and the

Attorney General fail to recognize that respondents attending a

civil commitment hearing are presumed competent.  People ex rel.

Drury v. Catholic Home Bureau, 34 Ill. 2d 84, 95 (1966). 

Accordingly, it cannot be assumed that Barbara H., or any other

respondent in her position, is incapable of waiving her right to be

present at her hearing.  Similarly, a state's parens patriae

interest in an individual does not exist until that individual has

been declared incompetent.  In re Orr, 176 Ill. App. 3d 498, 513

(1988).  Therefore, requiring the respondent's attorney, guardian

ad litem, or the court to inform her of her right to attend her

hearing cannot impede a State's parens patriae interest because at

that time the respondent is not incompetent.  

     The State and the Attorney General also contend that a waiver

from a respondent cannot be mandated because under such a procedure

the respondent's attorney would be required to explain to the court

whether the respondent understood her right to be at the hearing. 

The State and the Attorney General argue that these explanations of

whether a respondent understood her right to be present at a

hearing may be detrimental to the respondent's defense.  We find

this argument also unpersuasive.  Certainly, an individual's

ability to understand court procedure and a fundamental right

sufficiently enough to make a rational choice to attend a hearing

is quite different from that same individual's overall mental

capabilities and whether that individual is mentally incompetent. 

Further, under section 3--806(c) of the Code, no inference may be

drawn from a respondent's failure to attend his hearing. 

Accordingly, any possible damage that results from an attorney's

explaining his client's waiver or lack of waiver is negated by this

provision.

     Finally, the Attorney General and the State remind this court

in their briefs that the involuntary medication statute and the

involuntary commitment statute contain a 90-day period time

limitation and a 180-day period limitation.  The Attorney General 

claims that these time limits mean that only a "limited term of

infringement on the liberty interest at stake" results from these

civil commitment proceedings.  Further, the State adds that,

because the Code requires periodic review of every case, an

individual civilly committed is in a much different position than

the position of a criminal defendant who is deprived of his liberty

"for whatever term of imprisonment the judge imposes."  We

disagree.  

     By making such arguments, the State and the Attorney General

fail to acknowledge that the United States Supreme Court has

recognized that "for the ordinary citizen, commitment to a mental

hospital produces 'a massive curtailment of liberty.' "  Vitek, 445

U.S. at 491, 63 L. Ed. 2d at 564, 100 S. Ct. at 1263, quoting

Humphrey v. Cady, 405 U.S. 504, 509, 31 L. Ed. 2d 394, 402, 92 S.

Ct. 1048, 1052 (1972).  Indeed, commitment to a mental hospital

"can engender adverse social consequences to the individual" and

"can have a very significant impact on the individual."  Addington

v. Texas, 441 U.S. 418, 425-26, 60 L. Ed. 2d 323, 331, 99 S. Ct.

1804, 1809 (1979).  Accordingly, that the Code imposes a time

limitation on the period of commitment and the period in which

psychotropic medication may be administered does not change the

fact that the commitment results in a loss of freedom that affects

an individual's liberty interest.  Therefore, it remains necessary

for the State to comply with the minimum requirements of due

process.  See Vitek, 445 U.S. at 491, 63 L. Ed. 2d at 563, 100 S.

Ct. at 1263.

     This court wishes to note that it is not beyond our

recognition that requiring a respondent's waiver for the court to

proceed in absentia against a respondent raises several practical

concerns for our trial courts.  However, we are encouraged by laws

in other states that have already addressed this issue.  We believe

that these laws provide examples of civil commitment hearing

procedures that, if adopted by our legislature and followed by our

court system, protect a respondent's liberty interest without

throwing the trial courts into a state of disarray.  

     We note that several state laws simply provide that an

individual has a right to be present at the civil commitment

hearing unless he waives that right or the court proceeding cannot

reasonably continue while the person is present.  See, e.g., Minn.

Stat. Ann. §253B.08 (West 1996); N.J. Stat. Ann. §30:4-27.14 (West

1996); N.M. Stat. Ann. §43--1--11 (Michie 1996).  Accordingly, the

State's and the Attorney General's concern that a hearing may be

stopped "from going forward" because a respondent refuses to waive

her right but disrupts the proceedings is unfounded.  Instead, a

statute that recognizes that attendance at a commitment hearing is

a constitutional right that is only waivable by the respondent,

except in circumstances where the respondent's behavior disrupts

the court proceedings so that the hearing cannot continue in a

reasonable manner, adequately protects the respondent's liberty

interest and the state's interest in having a hearing.

     As currently drafted, section 3--806(a) affords no such

protection.  Instead, under section 3--806(a), an individual's

presence may be waived, even if that individual wishes to attend

the hearing.  This outcome is undoubtedly unconstitutional as it

flies in the face of the clearly enunciated fundamental right that

an individual has to be present at his civil commitment hearing. 

See Specht v. Patterson, 386 U.S. 605, 610, 18 L. Ed. 2d 326, 330,

87 S. Ct. 1209, 1212 (1967).

     Turning to the second part of section 3--806, this court finds

that section 3--806(b) is also unconstitutional on its face for the

reasons discussed above.  Specifically, we note that section 3--

806(b), while allowing an individual to "refuse[ ] to attend" the

hearing, does not provide that this refusal be made knowingly or

intelligently by the individual after that individual is aware of

his or her constitutional right to be present at the hearing and

that the hearing may proceed in that individual's absence.  See

Johnson, 75 Ill. 2d at 187 (discussing when a "waiver" is valid). 

Accordingly, like section 3--806(a), following the procedure in

section 3-806(b) can result in a hearing taking place without an

individual when that individual has not waived his right to be

present at that proceeding.  Therefore, because section 3--806(b)

fails adequately to protect an individual's liberty interest, we

find it unconstitutional.       

     In conclusion, we find that section 3--806(a) and section 3--

806(b) are unconstitutional on their face as they fail adequately

to protect an individual's liberty interest.  Accordingly, Barbara

H. is entitled to a new hearing on whether she can be involuntarily

committed to the Center as well as a new hearing on whether the

Center can administer psychotropic medication.  Therefore, because

new hearings will take place, we decline to address whether the

trial court's holding one combined hearing on both state petitions

in violation of the statute mandates a new hearing, or whether the

court's order authorizing psychotropic medicine was not supported

by the evidence.

     For the foregoing reasons, the judgment of the circuit court

of Kane County is reversed, and the cause is remanded.

     Reversed and remanded.

     McLAREN and BOWMAN, JJ., concur.